UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


| | | |
|---|---|---|
| LOUIS A. PICCONE, | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-30127-MAP |
| | ) | |
| TROOPER DICKINSON, | ) | |
| TROOPER HEAN, CAPTAIN | ) | |
| BLACKMER, JOHN DOE #1, | ) | |
| MASSACHUSETTS STATE POLICE, | ) | |
| OFFICER STANTON, | ) | |
| STOCKBRIDGE POLICE | ) | |
| DEPARTMENT, TOWN OF | ) | |
| STOCKBRIDGE, OFFICER ULLRICH, | ) | |
| GREAT BARRINGTON POLICE | ) | |
| DEPARTMENT, TOWN OF GREAT | ) | |
| BARRINGTON, OFFICER MICHAEL | ) | |
| WANDREI, OFFICER JOSH BAKER, | ) | |
| ADAMS POLICE DEPARTMENT, | ) | |
| TOWN OF ADAMS, OFFICER JOHN | ) | |
| DOE #3, GILL POLICE DEPARTMENT, | ) | |
| TOWN OF GILL, JOHN BARTELS, | ) | |
| OFFICER JEFFREY COE, OFFICER | ) | |
| JOHN SCACE, MICHAEL MCCLAY, | ) | |
| OFFICERS JOHN AND JANE DOE | ) | |
| # 4-10, DALTON POLICE | ) | |
| DEPARTMENT, TOWN OF DALTON, | ) | |
| PATRICK AMUSO, AND JOHN AND | ) | |
| JANE DOE # 1-10, | ) | |
| | ) | |
| Defendants | ) | |


REPORT AND RECOMMENDATION WITH REGARD
TO DEFENDANTS' MOTIONS TO DISMISS
(Document Nos. 31, 36, 64, 66, 69, 73, 77, 79, and 82)
May 15, 2013

NEIMAN, USMJ

Presently before the court is a variety of claims brought by Louis Piccone

("Plaintiff"), proceeding *pro se*.  Plaintiff's thirteen count complaint, which spans three-hundred and fifty-six paragraphs, is directed against myriad law enforcement officers (known and unknown), police departments and towns, specifically: Trooper Ryan Dickinson, Trooper Steven Hean, State Police Captain William Blackmer, the Massachusetts State Police, John Doe One, Trooper Dominic DiTomaso, Detective Richard Smith, Officer Michael Stanton, the Stockbridge Police Department, the Town of Stockbridge, Officer Timothy Ullrich, the Great Barrington Police Department, the Town of Great Barrington, Officer Michael Wandrei, Officer Josh Baker, the Adams Police Department, the Town of Adams, Officer John Doe Three, the Gill Police Department, John Bartels, Officer Jeffrey Coe, Officer John Scace, Michael McClay, Officers John and Jane Does Four through Ten, the Dalton Police Department, Patrick Amuso, and John and Jane Does One through Ten.  The court will refer to this group collectively as "Defendants."  All Defendants, with the exception of Patrick Amuso and certain unidentified John Does, have filed motions to dismiss.

Plaintiff's claims arise from his belief that Defendants have collectively conspired to deprive him of an assortment of constitutional rights over the span of three years. The counts in his complaint are as follows: Section 1983 claim for violation of the Fourth Amendment against Officer Dickinson (Count One); assault and battery against any Defendant who handcuffed Plaintiff (Count Two); intentional/negligent infliction of mental distress against all Defendants (Count Three); Section 1983 claim for violation of Plaintiff's right to be free from selective enforcement of laws against all Defendants (Count Four); Section 1983 claim for conspiracy against all Defendants (Count Five); Section 1983 claim for violation of the Fifth Amendment against all Defendants who

continued to question Plaintiff after he invoked his right to remain silent (Count Six);

Section 1983 claim for violation of Plaintiff's right to privacy against all Defendants

(Count Seven); Section 1983 claim for violation of right to access to the courts and

effective assistance of counsel against all Defendants (Count Eight); Section 1983

violation of Fourth Amendment and due process rights by all Defendants (Count Nine);

Section 1983 claim for violation of right to access to the courts and effective assistance

of counsel (also labeled Count Nine but which the court will refer to as Count Nine(a)),

Section 1983 claim for false arrest against all Defendants except the Dalton Defendants

(Count Ten); Section 1983 claim for violation of Plaintiff's right to be free from

unreasonable searches and seizures against all Defendants (Count Eleven); Section

1983 claim for supervisory liability-policy of unconstitutional action against all

Defendants (Count Twelve)[1]; and intentional/negligent interference with contractual

relationship against Michael McClay (Count Thirteen).  The nine motions to dismiss

have been referred to this court for a report and recommendation.  *See* 28 U.S.C. §

636(b)(1)(B) and Fed. R. Civ. P. 72(b).  For the reasons which follow, the court will

recommend that Defendants' motions be allowed.  The court will also recommend that

the claims against Patrick Amuso, who has not filed a motion, be dismissed *sua sponte*.

## I. PROCEDURAL POSTURE

Before settling in to the facts of this case, a review of its procedural history is

necessary.  Plaintiff filed his first complaint on July 17, 2012, and was provided with the

---

[1] This count is "against all Defendant Supervisor's [sic] involved in the Bowers case."  At no point in his complaint does Plaintiff explain what the Bowers case is, and so it remains unclear as to whether this claim is against any of the Defendants.

necessary summonses for service on Defendants the following day.  There was no

further action in the litigation until September 5, 2012, at which time Plaintiff filed an

amended complaint.  Another period of inaction lasted until November 20, 2012, when

Plaintiff filed a motion requesting an additional two weeks to make service on

Defendants.  (Document No. 6.)  District Judge Michael A. Ponsor allowed that motion

on December 3, 2012, granting Plaintiff an additional two weeks to make service but

warning that there would be no further extensions.

On December 28, 2012, two motions to dismiss were filed, the first (Document

No. 31) by the Massachusetts State Police, Officer DiTomaso and Officer Dickinson (the

"State Police Defendants"), the second (Document No. 36) by Officer Smith.  More than

two weeks after those motions were filed, *i.e.*, on January 14, 2013, Plaintiff filed a

motion (Document No. 48) requesting an additional two weeks, until January 28, 2013,

to file an opposition.  The court allowed Plaintiff's request on January 16, 2013.  On

January 29, 2013, one day after Plaintiff's responses to the two outstanding motions

were due, Plaintiff filed yet another request for an additional two weeks to respond to

the motions.  Again, on January 30, 2013, the court allowed Plaintiff's motion for an

extension, this time until February 11, 2013, but warned him that there would be no

further extensions.  February 11th, however, came and went without a word from

Plaintiff.  On February 15, 2013, Plaintiff filed a third motion for an extension of time

(Document No. 84), requesting thirty additional days to respond to the two motions to

dismiss.  Plaintiff's request was opposed by both sets of Defendants and on February

27, 2013, the court denied the motion for an extension, citing Plaintiff's inability to

comply with the earlier extensions and his lack of candor regarding the reasons for such

4

failure.  (See Document Nos. 92 and 93.)

Concurrent with the timing of the above motions, the remaining identified Defendants in this action began to file motions to dismiss, beginning on January 31, 2013, and ending on February 15, 2015; that same day, a day after his response to the first of this set of motions was due, Plaintiff filed a motion for extension of time requesting an additional thirty days to respond to *all* outstanding motions.  (Document No. 84).  The court denied Plaintiff's motion insofar as it concerned the first two motions to dismiss (Document Nos. 31 and 36), for which extensions previously granted had been violated by Plaintiff.  (See Docket entries 92 and 93.)  However, the court allowed Plaintiff's motion to the extent it concerned the remaining motions to dismiss (Document Nos. 64, 66, 69, 73, 77, 79, and 82), ordering Plaintiff to respond to them by March 15, 2013, but warning that there would be no further extensions.  Right on schedule, March 15, 2013, Plaintiff filed yet another motion for an extension of time, this time until March 29, 2013; in the alternative, Plaintiff asked the court to consider the memorandum incorporated in his motion as the opposition.  The court denied the motion to the extent it sought additional time but allowed it insofar as it included an opposition to the last seven outstanding motions to dismiss.

## II. FACTUAL BACKGROUND

The facts of this case span three years and appear to be anchored by what Plaintiff characterizes as nine "incidents" in which he was stopped by police officers - - some of whom are identified and others who remain unknown - - from various police departments.  Almost all of the incidents resulted in traffic or criminal citations against Plaintiff for, among other things, driving with a suspended license, speeding, driving with

an expired registration, and failing to pull over for a police car.  Plaintiff alleges that

these incidents, viewed together, amount to a conspiracy to deprive him of his

constitutional rights in retaliation for a lawsuit he initiated in 2009 against certain towns

and police officers, some of whom are also Defendants here.  *See Piccone, et al. v.*

*McClain*, et al., 2013 WL 1763272 (D. Mass. April 23, 2013).[2]  The nature of Plaintiff's

allegations range from specific interactions with certain named Defendants to more

chimeral accusations - - for example, unnamed officers "white wash[ing]" internal affairs

investigations behind a "wall of blue" - -  that are difficult to tie to any one Defendant.

Given the difficulty of summarizing such a wide range of allegations in one fell swoop,

the court will instead relay the facts as they relate to each group of Defendants and the

claims against them.  In so doing, it will become clear that Plaintiff's gallimaufry of

claims, looked at closely, do not amount to a violation of any of his rights, much less the

constitutional rights he asserts.  In addition, as will be explained, Plaintiff has failed to

properly serve most of the Defendants and, for that reason as well, the court will

recommend that Defendants' various motions to dismiss be allowed.

### III. Standard of Review

Although a complaint generally requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a plaintiff still

must allege enough facts so that the claim is "plausible on its face,"  *Bell Atlantic Corp.*

---

[2] When dismissing that case, District Judge Mark L. Wolf explained that "[t]o be fair to defendants, to give integrity to court orders, and to allow this court to manage its caseload, this case is now being dismissed as a sanction for Piccone's failure to obey" a prior order of the court which had given Plaintiff one last opportunity to prove his inability to pay certain sanctions.

*v. Twombly*, 550 U.S. 544, 555-56, 570 (2007), *i.e.*, the factual content pled should

"allow[] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In drawing such an

inference, a court need not credit "bald assertions, unsupportable conclusions, and

opprobrious epithets." *Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st

Cir. 2003) (quoting *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.

1989)). "In short," the First Circuit has explained, "an adequate complaint must provide

fair notice to the defendants and state a facially plausible legal claim." *Ocasio-

Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

IV. DISCUSSION

The court will first address Counts Eight and Nine(a) and then turn to the

unopposed motions to dismiss by the State Police Defendants and Officer Smith. The

court will proceed to the remaining motions and then address Patrick Amuso's situation.

A. Counts Eight and Nine(a)

As an initial matter, the court will recommend that Counts Eight and Nine(a), both

of which allege Section 1983 claims for "violation of right to access to the courts and

effective assistance of counsel" - - be dismissed outright as to all Defendants. As is

evident when compared, the counts are duplicative but, of more concern, the lack of any

allegations in the preceding three-hundred and nineteen paragraphs of Plaintiff's

complaint that even allude to, let alone support, a denial of Plaintiff's access to the

courts or the assistance of counsel. Moreover, both counts are comprised of

nonsensical allegations which refer, at times, to a female plaintiff and, at others, to

multiple plaintiffs.[3]  Defendants, as would be expected, have moved to dismiss these

claims based on irrelevance and the absence of any supporting facts.  Defendants'

motions are on point and, based on its own assessment of these two counts, the court

will recommend that their motions be allowed and these claims be dismissed as to all

Defendants.

     B.  <u>The Unopposed Motions to Dismiss</u> <u>(Document Nos. 31 and 36)</u>

     As described, two separate motions to dismiss were filed on December 28, 2013,

by the State Police Defendants and Officer Smith and, despite receiving two extensions

of time, Plaintiff failed to respond.  Given that failure, the court recommends that these

two motions be allowed.  To the extent the trial court may be hesitant to dismiss these

claims on such grounds, this court suggests that dismissal on other grounds is

appropriate as well.  As to Smith, it appears that he was never properly served with the

complaint.  Moreover, Plaintiff has failed to state claims upon which relief can be

granted against either Smith or the State Police Defendants for the very reasons set

forth in their supporting memoranda (Document Nos. 32 and 37).

     Pursuant to Fed. R. Civ. P. 4(e)(2), proper service of process upon an individual

defendant may occur in one of three ways: (1) personal service of the summons and

---

[3] By way of example, Count Eight asserts that "[d]uring the entire period from the date in early July 2010, when plaintiffs were entitled to have access to *her* complete files, through the present, without appropriate authorization, the defendants, and each of them . . . unlawfully prevented, impeded, or otherwise interfered with Plaintiff's constitutional right to access to the courts, and to the effective assistance of counsel." (Compl. ¶ 321 (emphasis added).)  And in Count Nine(a), Plaintiff alleges that "as a direct and proximate result of defendants' acts, plaintiff, was subjected to severe mental anguish, emotional distress, and prevented from attending to *her* necessary personal affairs and business matters during the period from *her termination* to the present." (Compl. ¶ 332 (emphasis added).)

complaint, (2) delivery of both to a suitable person residing at the defendant's dwelling house or usual place of abode, or (3) delivery of both to an agent authorized to receive service of process on behalf of that defendant.  In addition, Fed. R. Civ. P. 4(e)(1) instructs that proper service may also be effected pursuant to the law of the state in which the district court is located, in this instance, Massachusetts.  Massachusetts law requires service of an individual defendant "personally; or by leaving copies thereof at his last and usual place of abode; or by delivering a copy of the summons and the complaint to an agent authorized by appointment or by statute to receive service of process."  Mass. R. Civ. 4(d)(1).

Despite these options, Plaintiff served Smith by leaving the summons with someone named Carolyn at the Berkshire County District Attorney's Office.  (Document No. 37 Ex. A.)  Smith, in turn, has filed an affidavit confirming not only that he was never personally served but as well and more to the point, that he had not designated anyone as his agent to accept service of process.  (Document No. 37 Ex. B.)  Without proper service, a court cannot exercise personal jurisdiction over a defendant. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).  On that ground alone, Smith's motion could be allowed.

The court also suggests that Plaintiff's complaint, even if properly served on Smith, fails to state claims against him upon which relief can be granted.  First, the paragraphs in which Smith is named are devoted to a recitation of the facts of a prior action brought by Plaintiff against him and others, *Piccone et. al. v. McClain,* Civil Action No. 09-30146-MLW, asserting claims which cannot be relitigated here.  *See Allen v. McCurry*, 449 U.S. 90 (1980) ("Under *res judicata*, a final judgment on the merits of an

action precludes the parties or their privies from relitigating issues that were or could

have been raised in that action.").  Even if it were possible to pursue Smith here,

Plaintiff's present claims - - which he paints as a "whispering campaign" spearheaded

by Smith - - are mere conclusory statements which do not amount to a cause of action.

*See Ashcroft*, 556 U.S. at 679 (a complaint that "tenders naked assertions devoid of

further factual enhancement" will not suffice) (internal quotations omitted).

It would  also be appropriate to dismiss Plaintiff's claims against Smith given the

unpaid sanctions owed him in the earlier action; indeed, Plaintiff's claims against Smith

in the earlier action were dismissed *because* Plaintiff had failed to pay him sanctions as

ordered by the court.  *See Piccone,* 2013 WL 1763272 at *2.  As explained in *Hacopian*

*v. United States Dept. of Labor*, 709 F.2d 1295, 1297 (9th Cir. 1983), "[t]he sanction of

dismissal for nonpayment of costs in a prior involuntarily dismissed action can . . . be an

important power for the district court in preventing harassment and vexatious litigation."

In short, the Ninth Circuit continued, "an action based on or including the same claim as

a prior involuntarily dismissed action may be dismissed for nonpayment of costs in the

prior action."  *Id.*[4]

For separate reasons, Plaintiff's claims against the State Police Defendants

should be dismissed as well.  Given Plaintiff's allegations, that "during all times

mentioned in this complaint, the defendants and each of them were duly appointed

employees of their respective states, acting in their official capacities" (Compl. ¶ 277),

---

[4] The same would hold true here for the Dalton Defendants, since that same prior
action against them was also dismissed for parallel reasons, *i.e.*, Plaintiff's failure to pay
an ordered sanction.  *See Piccone,* 2013 WL 1763272 at *2

his claims against the State Police Defendants are actually claims against the

Commonwealth of Massachusetts.  But Plaintiff's demand for money damages arising

under 42 U.S.C. § 1983, which is the only relief he requests, is barred by virtue of the

Commonwealth's Eleventh Amendment immunity.  *See Wang v. New Hampshire Bd. of*

*Registration in Medicine*, 55 F.3d 698, 700 (1st Cir. 1995) (quoting *Johnson v.*

*Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991) ("it is well settled 'that neither a state

agency nor a state official acting in his official capacity may be sued for damages in a

section 1983 action'"")).  The same type bar holds true with respect to Count Three,

Plaintiff's claim for intentional/negligent infliction of mental distress, to the extent it

targets the Commonwealth via the State Police Defendants.  *See Irwin v. Commissioner*

*of the Depart. of Youth Services*, 448 N.E.2d 721, 728 (Mass. 1983) (The

Massachusetts Tort Claims Act does not waive the Commonwealth's Eleventh

Amendment immunity to suit in Federal courts).

C. The Town of Gill, Gill Police Department, and Officer John Doe Three[5]
   ("The Gill Defendants")' Motion to Dismiss (Document No. 64)

As of the filing of their motion to dismiss, the Gill Defendants had not yet been

served by Plaintiff, despite the court's instruction that he serve all Defendants by

December 17, 2012.  On that basis alone, the court recommends that the Gill

Defendants' motion to dismiss be allowed.  The court also suggests that the Gill

Defendants' motion could be allowed in light of Plaintiff's failure to state a claim upon

---

[5] Plaintiff has identified the police officer from the Town of Gill variously as John Doe "Six" and John Doe "Three."  Given the particular allegations in the complaint, the Gill Defendants have appropriately treated John Doe "Three" and John Doe "Six" as the same officer.  The court does the same.

which relief can be granted.

The Gill Defendants have assumed that the counts which apply to them are those leveled by Plaintiff against "all Defendants," as described above.  With that understanding, which the court finds appropriate, the Gill Defendants scoured the complaint for any mention of them and determined that "Incident six" is the only set of facts in which they are implicated.  "Incident six" is described by Plaintiff as a traffic stop by John Doe Six of the Gill Police on July 19, 2011.  According to Plaintiff, John Doe Six explained that he was pulled over because he did not have a valid inspection sticker on his car.  Plaintiff alleges that, at the time, his inspection sticker was valid for another three months and, in response, John Doe Six told him that his computer said otherwise and gave him a ticket.  Plaintiff surmises that the Gill Police were tipped off that he would be passing through and stopped him to harass and intimidate him.  Notably, Plaintiff does not allege that he disputed the citation or prevailed on the citation, despite his assertion that his inspection sticker was valid.  Even viewing these facts in a light most favorable to Plaintiff, the court cannot make out any constitutional violation by the Gill Defendants and, accordingly, recommends that their motion to dismiss be allowed.

D. <u>The Town of Stockbridge, the Town of Stockbridge Police Department and Officer Michael Stanton (the "Stockbridge Defendants")' Motion to Dismiss (Document No. 66)</u>

The Stockbridge Defendants make their appearance in Plaintiff's complaint in "Incident seven," which took place around June of 2012 when Plaintiff was stopped in Stockbridge by Officer Stanton.  As described by Plaintiff, Officer Stanton explained that he had been asked by Officer Ullrich (another named Defendant) to conduct a "well-being check."  When Officer Ullrich arrived on the scene shortly thereafter, he explained

that Plaintiff was believed to have been a witness to a non-criminal incident in

Massachusetts and that the well-being check was to ensure that he was okay.  (Plaintiff,

however, does not explain what this non-criminal incident was, nor does he deny being

a witness to it.)  In any event, in the course of the stop, Officer Ullrich ran Plaintiff's

license plate and found that his license was suspended, at which time he told Plaintiff

that he would not be allowed to drive his car.  Plaintiff alleges that he subsequently

received a criminal traffic citation in the mail from Officer Stanton, Officer Ullrich, and

another unnamed officer, in violation of a Massachusetts law that requires that citations

for violation of motor vehicle laws be given to an offender at the time and place of the

traffic offense.  Despite the alleged "illegality" of the citation, Plaintiff does not allege that

he disputed or otherwise defended the citation at the state level.

Again, even reading the complaint in a light most favorable to Plaintiff, the court

is unable to make out grounds for any of the alleged constitutional violations he has

alleged.  Even assuming that Officer Stanton pulled Plaintiff over at the behest of Officer

Ullrich to conduct a "well-being check," such a check, though perhaps inconvenient to

Plaintiff at the time, does not rise to the level of a constitutional violation.  *See*

*Commonwealth v. Knowles*, 883 N.E.2d 941 (Mass. 2008) (a justified well-being check

does not amount to an unlawful search and seizure).  In addition, Plaintiff's claims of

negligent/intentional infliction of emotional distress against Stockbridge should be

dismissed because Plaintiff has failed to make proper presentment of his claims

pursuant to Mass. Gen. Laws ch. 258 § 4.  *See Haley v. City of Boston*, 657 F.3d 39, 55

(1st Cir. 2011) ("The statute explicitly directs that the making of presentment precede

the commencement of suit.  A plaintiff's obligation to follow this sequence is relieved

only where the defendant has waived the requirement that presentment precede the

institution of litigation.").

    E.  <u>The Town of Adams, Officer Michael Wandrei, and Officer Josh Baker
(the "Adams Defendants")' Motion to Dismiss (Document No. 69)</u>

Like many of their fellow defendants, the Adams Defendants were never properly

served and move to dismiss the claims against them pursuant to Fed. R. Civ. P.

12(b)(5). That being true for all the reasons set forth in their supporting memorandum,

the court recommends that their motion to dismiss be allowed. The Adams Defendants

also move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because of Plaintiff's asserted

failure to state any claim against them entitling him to relief. The court agrees.

The Adams Defendants make their cameo appearance in "Incident eight" of

Plaintiff's saga, which took place on July 7, 2012. As alleged in his complaint, Plaintiff

was driving in Adams when a police cruiser passed his car, made a u-turn, and then

turned on its overhead lights, indicating that Plaintiff should pull over. Plaintiff slowed

down but continued to drive, while simultaneously calling 911 on his cell phone to tell

the dispatcher of his intention to travel to the nearest police station so the traffic stop

could occur there. The police dispatcher told Plaintiff to stop his vehicle and obey the

responding officer's instructions. When Plaintiff eventually exited his vehicle, he was

told to kneel on the ground and put his hands on his head; in the course of following

those instructions he dropped his cell phone and car keys on the ground in front of him

and was subsequently handcuffed and taken into custody. Plaintiff was charged with a

criminal offense (he does not indicate which) and released around 3:30 a.m. without a

car. The next morning, Plaintiff went to the tow facility to retrieve his car and learned

that the officers had never given the tow company his keys and that the police did not have them either.  Plaintiff returned to the place where he was originally stopped and located his cell phone and keys on the side of the road where he had dropped them.

Having reviewed these allegations against the Adams Defendants, the court can discern no violation of Plaintiff's constitutional rights.  An arrest arising out of Plaintiff's refusal to comply with a police cruiser's emergency lights is hardly the fault of the police officer and certainly not an affront to Plaintiff's rights.  If Plaintiff disagreed with the charge against him, he had recourse in state court.  Further, even if the arrest were based on the Adams Defendants' mistaken judgment, as Plaintiff contends, the officers are entitled to qualified immunity, as a reasonable officer acting in their stead would have found probable cause for arresting an individual who refused to respond to emergency lights.  *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citing *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1984) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'").  Accordingly, the court recommends allowing the Adams Defendants' motion to dismiss.

F.  William A. Blackmer's Motion to Dismiss (Document No. 73)

William Blackmer ("Blackmer") is the commanding officer of the State Police barracks in Cheshire where Trooper Dickinson, a co-defendant, is based.  At some point after a July 17, 2009 traffic stop by Trooper Dickinson, Plaintiff arranged to meet with Blackmer at a Starbucks coffee shop to discuss an internal affairs investigation he filed in connection with the stop.  At that meeting, Blackmer allegedly told Plaintiff that there had been some problems at the barracks, including new state troopers wearing

their uniforms off duty.  Blackmer also allegedly told Plaintiff that, when he notified

Trooper Dickinson about his meeting with Plaintiff, Dickinson and other troopers

indicated that they were going to drive by the Starbucks during the meeting; there is no

indication whether the troopers did, in fact, drive by the Starbucks.  Blackmer told

Plaintiff not to worry about such childish pranks.  That is the extent of Plaintiff's facts as

they relate to Blackmer.

   The meeting between Plaintiff and Blackmer, in the court's opinion, does not

state a claim for any of the constitutional violations Plaintiff alleges against him.  *See*

*Ashcroft,* 556 U.S. at  678 (Fed. R. Civ. Pro. 8(a)(2) "demands more than an unadorned,

the-defendants-unlawfully-harmed-me accusation.")  Nor, in the court's opinion, has

Plaintiff adequately stated a claim for emotional distress against Blackmer based on this

meeting.  *See Johnson v. Town of Nantucket*, 550 F.Supp.2d 179, 183 (D. Mass. 2008)

(to make out a claim for emotional distress a plaintiff must show that the defendant's

conduct was extreme and outrageous).  Because Plaintiff has failed to state any claim

upon which relief could be granted, the court will recommend that Blackmer's motion to

dismiss be allowed.

   G.   The Town of Great Barrington, Great Barrington Police Department and
        Timothy Ullrich (the "Great Barrington Defendants")' Motion to Dismiss
         (Document No. 77)

   As an initial matter, Timothy Ullrich ("Ullrich") moves to dismiss the claims

against him given Plaintiff's failure to properly serve him.  Despite indicating to the court

that Ullrich had been properly served, Plaintiff concededly left the summons and

complaint for him at the Great Barrington Police station in contravention of Fed. R. Civ.

P. 4(e)(2) and Mass. R. Civ. P. 4(d)(1).  Accordingly, the court will recommend that

Ullrich's motion to dismiss be allowed.

The Great Barrington Defendants also move to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6).  Those claims arise from a June 2012 incident, "Incident seven," described earlier as the incident in which Officer Ullrich allegedly asked Officer Stanton to pull Plaintiff over for a "well-being" check.  Upon checking Plaintiff's license, Officer Ullrich discovered it had been suspended and told Plaintiff he would not be able to drive his car.  Plaintiff does not dispute that, at the time of this incident, his license was suspended.

Again, the court is unable to read a violation of Plaintiff's constitutional rights from his recitation of the facts.  As Plaintiff tells it, Ullrich conducted a well-being check, discovered that he was driving without a license and told him he would not be able to drive.  If Plaintiff felt that the citation for driving without a license was inappropriate, he could and should have appealed it at the state level.  As it stands, however, Plaintiff has not alleged that the citation was inappropriate.  Accordingly, the court will recommend that the Great Barrington Defendants' motion to dismiss be allowed.

H.  Defendant Steven Hean's Motion to Dismiss (Document No. 79)

Steven Hean ("Hean") is a Massachusetts State Police Trooper who was allegedly involved in "Incident nine" on July 16, 2012.  This incident involved Plaintiff's arrest on an outstanding warrant.  After Plaintiff was arrested and brought to the Cheshire State Police barracks by John Does numbered Six and Seven, Hean booked and processed him.  Plaintiff asked Hean how the police knew where he would be and Hean "refused to answer any of Plaintiff's questions [and] shortly thereafter left the room where Plaintiff was being booked."  (Compl. ¶ 264.)  That is the entirety of Plaintiff's

allegation against Hean; in the court's view, that allegation fails to amount to any
cognizable claim.  Accordingly, the court recommends that Hean's motion to dismiss be
allowed.

I.  <u>John Bartels, Officer Jeffrey Coe, Officer John Scace, Michael McClay, the
Dalton Police Department and The Town of Dalton (the "Dalton Defendants")'
Motion to Dismiss (Document No. 82)</u>

The Dalton Defendants move to dismiss Plaintiff's claims pursuant to Fed. R. Civ.

P. 12(b)(5) given his failure to properly serve any of them.  Apparently, Plaintiff  only

attempted to serve Jeffrey Coe ("Coe") and John Scace ("Scace") and made no effort to

serve the other Dalton Defendants.  With respect to Coe and Scace, Plaintiff's efforts

did not comply with Fed. R. Civ. P. 4(e)(1) because, instead of serving them personally

or at their dwellings, he simply left the summons and complaint with an officer at the

Dalton Police Department.  Accordingly, the court will recommend that the Dalton

Defendants' motion to dismiss be allowed.

Notwithstanding such failures to serve, the Dalton Defendants also move to

dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has

failed to state a claim upon which relief may be granted.  Having reviewed the

complaint, the court agrees.  As an initial matter, like the other police departments listed

as Defendants, the Dalton Police Department itself is not the appropriate defendant

since "a suit against a municipal police department or its chief (in his or her official

capacity) is deemed to be a suit against the municipality itself."  *Murphy v. Town of

Natick*, 516 F.Supp.2d 153, 158 (D. Mass. 2007).

As for John Bartels ("Bartels"), Plaintiff's claims are little more than conclusory

statements.  Plaintiff alleges that Bartels, and others, "violated the felony criminal laws

of the Commonwealth of Massachusetts," "organized Plaintiff's neighbors to inform on [him] regarding [his] whereabouts," and "caused a whispering campaign against Plaintiff among the law enforcement community of Berkshire County to despise and take action against Plaintiff." (Compl. ¶¶ 41, 41, 45.)  This campaign against him, as Plaintiff sees it, is retaliation for a law suit he filed against Bartels and certain other Defendants for violation of his civil rights.  *See Piccone et al v. McClain*, Civil Action No. 09-30146-MLW.  As explained, that case has been dismissed because, in the main, Plaintiff was unable to abide by court orders.  In any event, the only allegations against Bartels in the instant matter are vague accusations of conspiracy and whispering campaigns carried out at his behest.  Such accusations are insufficient.  *See Ashcroft,* 556 U.S. at 679 (a complaint that "tenders naked assertions devoid of further factual enhancement" will not suffice) (internal quotations omitted).  Given the absence of any supporting facts in the complaint, the court will recommend that Bartels' motion to dismiss be allowed.

As for Officers Coe and Scace, they appear in the complaint in connection with "Incident four" on November 14, 2009.  As described by Plaintiff, he was driving in Dalton when a Dalton police car traveling in the opposite direction turned on its overhead lights and swerved into Plaintiff's lane.  After swerving onto the side of the road to avoid a collision, Plaintiff turned around, began to follow the car, and called a 911 operator.  Plaintiff followed the police car to the Dalton police station where he found it parked out front and, after speaking to someone inside, learned that Officer Scace had most recently returned to the station.  Plaintiff then returned to his car and, while sitting in it, was approached by Scace who told him that he had been speeding. Plaintiff alleges that "it was clear that Defendant Officer Scace wanted to issue [him] a

citation" but does not allege that any citation was ever issued.  Officer Scace told

Plaintiff that he had swerved into his lane to avoid an elevated sewer on the road; at this

point in the conversation Plaintiff believed Scace was harassing him and again dialed

911, at which time Scace returned to the police station.

Following this incident, Plaintiff asserts in his complaint, he filed an internal affairs

complaint against Scace, to which Officer Coe was assigned.  The allegations against

Officer Coe appear to be based on Plaintiff's displeasure with the findings of his internal

affairs report, which concluded that "intent to harm specifically Mr. Piccone cannot be

implied and there is no other evidence to support that Officer Scace knew it was Mr.

Piccone until that point.  There is also no evidence of criminal intent."  (Compl. ¶ 125.)

Plaintiff alleges that "Defendants Bartels and Coe agreed to whitewash fellow officer

Scace's misconduct and assault, by conducting a biased internal affairs investigation

designed to exonerate Scace."  (Id. at 116.)  Plaintiff, however, alleges no specific facts

in support of this conspiracy.  Even reading these facts in a light most favorable to

Plaintiff, the court is unable to make out a violation of Plaintiff's constitutional rights.

See Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) ("on

a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched

as a factual allegation'").  Accordingly, the court will recommend that Plaintiff's claims

against Officers Scace and Coe be dismissed.

Finally, Michael McClay makes a cameo appearance in Plaintiff's complaint at

paragraph two-hundred and forty-three.  Plaintiff alleges that on or about July 7, 2012,

he learned that McClay, who is an animal control officer, informed Plaintiff's tenant that

the house he lived in had been foreclosed upon and that the lending bank would be

taking possession of it in the next ten days, causing Plaintiff's tenant to refuse to pay overdue rent.  Plaintiff alleges that McClay's allegedly false statements constitute interference with contractual relations.  Given the court's recommendation that all of Plaintiff's federal claims be dismissed, it will also recommend that this state law claim be dismissed without prejudice to Plaintiff pursuing it, if he wishes, in state court.

     J.  <u>The claims against Patrick Amuso</u>

Patrick Amuso ("Amuso"), a tenant in Plaintiff's Dalton home, has not answered his amended complaint or filed a motion to dismiss, although, curiously, he filed an opposition to one of Plaintiff's motions for additional time to respond to some other defendants' motions to dismiss (Document No. 51).[6]  Nevertheless, the court, having reviewed the claims against Amuso and in light of its other recommendations, suggests that they be dismissed *sua sponte* pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff's claims against Amuso, like many of those against the other defendants, are directed against "all Defendants" and include various Section 1983 claims as well as assault and battery and emotional distress.  In essence, Plaintiff alleges that Amuso gave various police officers information about his whereabouts and, in so doing, "was acting in the capacity of an informant for the police and, for this and other reasons, was acting under the color of State law."  (Compl. ¶ 273.)  Plaintiff "inferred that Defendant Amuso had been recruited and became an informant for local police just as Plaintiff's next door neighbor had been recruited and informed on Plaintiff."  (Id. at 274.)  Thus, Plaintiff believes that Amuso was involved in a conspiracy to deprive him of his rights

---

     [6] Amuso also filed a motion to strike certain paragraphs from Plaintiff's complaint (Document No. 102), which motion has been allowed by the court without opposition.

(although he also acknowledges that during this time he met with Amuso to sign an extension of his lease).  (Id. at 242.)

Even if Amuso could be deemed a state actor, which is unlikely, Plaintiff's claims against him simply do not amount to a violation of Plaintiff's constitutional rights for many of the same reasons that Plaintiff's claims against the other defendants fail as well.  *See Ashcroft,* 556 U.S. at 679 (a complaint that "tenders naked assertions devoid of further factual enhancement" will not suffice) (internal quotations omitted).  In short, Plaintiff has not "nudged his claims" of conspiracy against Amuso "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  Accordingly, the court recommends that they be dismissed.

## IV.  CONCLUSION

 The facts alleged in Plaintiff's complaint establish at best that he was pulled over by various police officers over the course of three years for traffic violations which he did not contest.  This speaks less to a conspiracy and more, perhaps, to Plaintiff's inability to comply with state traffic laws.  To be sure, Plaintiff, in his opposition to Defendants' motions, attempts to excuse the flimsiness of his allegations, broadly arguing that, "if a specific defendant has few factual allegations, then the final fifteen paragraphs . . . of the complaint contain generic language that establish [sic] that each defendant, as a law enforcement officer, was in a position to prevent, the other officers from violating Plaintiff's civil rights."  This is nonsensical.  Plaintiff fails to understand that, when considering a motion to dismiss, a court need not entertain "bald assertions, unsupportable conclusions, and opprobrious epithets."  *Campagna,* 334 F.3d at 155. This is the very nature of the final fifteen paragraphs of his complaint, let alone the other

paragraphs as well.  For the reasons stated, therefore, the court recommends that

Defendants' Motions to Dismiss (Documents No. 31, 36, 64, 66, 69, 73, 77, 79, and 82)

be ALLOWED and that the claims against Amuso be dismissed as well *sua sponte.*[7]

DATED: May 15, 2013

             /s/   Kenneth P. Neiman
             KENNETH P. NEIMAN
             U.S. Magistrate Judge

---

[7] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.